## McGILL et al. *v.* ASH.

Trespass *quare clausum fregit* lies by one tenant in common against his co-tenant, where an actual ouster is proved.
And his admissions of the plaintiff's right, and his offers to account for the profits, are no defence.
Admissions of one defendant that the trespass was authorized by him, are evidence against him.
A constable must prove his warrant in order to come within the act of 1772.

In error from the District Court of Philadelphia.

*March 9.*—Ash brought trespass *quare clausum fregit* against McGill, his co-tenant, Smith, the tenant in possession under McGill, and Albright. In the count on which the verdict was entered, he declared generally for an expulsion from his house.

It appeared on the trial before Jones, P. J., that Ash having recovered one-fifth of the house, in ejectment against McGill, had been put into possession by the sheriff. A few days afterwards, he brought his goods there, when he and his goods were violently turned out by Smith, the tenant, and Albright, who was a constable. The plaintiff proved, under exception, the declarations of McGill, the landlord, that he intended to keep him out, and his admissions subsequent to the affray, that he had authorized the acts of his tenant. The admission of this testimony, and the ruling that the action would lie, were the main questions argued.

The court also rejected the admissions by McGill, of the title of the plaintiff, and his offer, anterior to the trespass, to account to him for one-fifth of the rent. It had been proved, by parol, that after the affray began, Albright procured a warrant from an alderman, on a complaint of a breach of the peace. His honour

said, that since that had not been given in evidence, or a justifica-
tion pleaded, he would not be liable to exemplary damages, if act-
ing fairly in the suppression of a tumult; but if he acted in con-
cert with Smith, under colour of his office, it was an aggravation.

The defendant also assigned for error, that the verdict and judg-
ment was for a trespass to the whole property, and not to the plain-
tiff's one-fifth.

These were the only points which were much pressed.

*Kennedy*, for plaintiff in error.—Is a tenant in common com-
pelled to allow a forcible entry by his co-tenant, where he admits
the title, and is willing to account for the profits? But trespass
will not lie, since there can be no constructive ouster, each being
entitled to possession; 4 Kent, 370; 10 Watts, 190. [BELL, J.—That
does not apply ; here was an actual turning out.] The declarations
of McGill were not admissible against his co-defendants, until they
were connected with him. [GIBSON, C. J.—They were admitted to
connect him with those who had been actually concerned in the
trespass.] Albright was constable, and had a warrant; he was
therefore not liable under the act of 1772, s. 6.

*C. Ingersoll* and *Randall*, contrà.

*March* 15. COULTER, J.—This is an action of trespass *quare
clausum fregit*, instituted by Ash against McGill and nine others,
for breaking and entering the dwelling-house of the plaintiff, and
expelling him from the possession. The defendants took five bills
of exception to evidence offered by the plaintiff, and admitted by
the court, which do not require a separate consideration. They
relate and embrace the same kind of evidence proposed to be given
by different persons, to wit, the admissions of McGill, one of the
defendants, who was not present at the time of the alleged tres-
pass, that he had authorized, and directed, and sanctioned it. Some
of the offers were of direct unequivocal admissions, and one or two
of them were his declarations, which conduced to prove that he had
authorized the trespass. No principle in regard to the action of
trespass is better established than this, that all persons who order
or procure a trespass to be done, or incite others to do it, are guilty
of the trespass, and may be made defendants in the action ; Britton
*v.* Cole, 1 Salk. 409 ; Archbold's Law N. P. 312. And I do not
know any higher, or more reliable evidence of a fact, than the ad-
missions or declarations of a party who is to be prejudiced, freely
and voluntarily made. It is of no consequence whatever, that

these admissions and declarations were made after the fact. That only gives them more point and potency. These bills of exception are therefore dismissed, with this further observation, that McGill had rented the *locus in quo* to Mrs. Smith for a tavern, one-fifth of which premises had been recovered in ejectment by Ash, who had been put into possession as a tenant in common, by the sheriff, and whose goods and himself were thrown out by a posse, apparently collected for the purpose by his tenant, Mrs. Smith; which, taken in connection with his enjoying the rent, and his other acts, in proof in the cause, give greater colour and weight to his admissions.

There is no value in the next, being the sixth bill of exceptions, because Mrs. Tucker did not testify that Mrs. Smith had any conversation with Mackey at the time of the expulsion. It was in vain, therefore, to propose asking Mackey what conversation he had with Mrs. Smith, in the presence of Mrs. Tucker, for the purpose of invalidating her testimony. She testified that there was a fight, much noise and confusion, throwing out furniture, and what some of the witnesses called a row, and that Mrs. Smith was the presiding and controlling spirit, but not a syllable of any conversation between her and Mackey. The next exception covers a proposed question by defendant to Mr. Laws, to wit, what took place in his office at the time of the hearing, on the day of the alleged trespass. This question was too general and vague. Many things might have taken place there on that day, which had no relation to the issue whatever, and a great deal might have been said and done in the absence of Ash, the plaintiff below. It would seem to have been on this ground alone that the question was overruled by the court, because the alderman did afterwards, without let or hindrance, state all that did take place, and some things which were not evidence, but favourable to the defendants. The next exception is in regard to a question proposed to be asked Cecilia Smith by the defendant, to wit, what Mrs. Smith said to Ash with respect to the rent of the house. But this was altogether impertinent to the issue, and could not tend to justify or excuse the alleged trespass. Michael McGill, one of the defendants, was then called, to prove that he had not possession of a certain receipt book, called for, I presume, by the plaintiffs. There is nothing in the bill of exceptions from which I can ascertain what this receipt book had to do with the case, or why it should be in the possession of McGill; nor what useful or relevant purpose could be accomplished by McGill's purging himself of its possession. The exception is too bald to

justify the court in disturbing the judgment. The final exception to evidence is the rejection of an offer by defendant to prove, by one Kennedy, that he was present at a conversation between Ash, McGill, and Mrs. Smith, in which Mrs. Smith told Ash, after he was put into possession by the sheriff, that she would acknowledge him as her landlord for one-fifth part, and that McGill offered to account to him for the rents accrued since the decision of the Supreme Court. I am at a loss to perceive why the plaintiffs objected to this evidence, as it was clearly an aggravation of the trespass. ·But the court rejected it, because it did not appear that it was the same conversation referred to by George Tucker, a witness on the part of the plaintiff, and it could not be given in evidence to contradict him, and was evidence on no other ground. It was clearly not evidence in excuse, mitigation, or justification of the alleged trespass, and was probably offered only with a view of contradicting Tucker, but as it was not the same conversation to which he testified, it could not accomplish that purpose, and was therefore properly overruled. Next come five exceptions, or rather errors assigned, to the charge of the court. But the exception to the charge or direction was general, and in these words, "and then and there the counsel for the defendant did except to the foregoing charge and opinion of the said court." I shall therefore only consider the first, which assigns for error the answers of the court to the several points submitted to the court, and on which their opinion was requested, on the authority of Stafford v. Walker, 12 Serg. & Rawle, 196; 8 Johns. Rep. 493, and 7 Wheat. 426. The two first points submitted are of the same import. But it is well settled, that a tenant in common may maintain trespass for an injury done to his possession, because that possession is not confined to any particular part of the premises, but is commensurate with the whole, in relation to which he has the right to an exclusive possession, except as against his co-tenant, and the measure of damages will be regulated by the extent of his interest. This answers the two first points, and also the fourth, to wit, that a tenant in common cannot maintain trespass against a stranger. The third point is, that one tenant in common cannot maintain trespass against his co-tenant. It is very clear, however, that he can; 1 Salk. 392. The principle results from the reason and nature of the connection between the parties, its ends and purposes, as well as from the positive rule of authority.

The court instruct the jury that the plaintiff could not recover for mesne profits, but for the trespass only, and in doing so admitted

the fifth point put by the defendant's counsel, substantially and as far as the law would allow. The court below did not instruct the jury that Ash was entitled to the exclusive possession of any part of the premises, or that he was at liberty to remove Mrs. Smith, the tenant of McGill, from any part of the premises, but that being put into possession by authority of the law, he was entitled to a common possession, and no more; in short, that he was entitled as a tenant in common, which the highest court had adjudged him to be. This was undoubtedly a correct view of the law of the case, and was a response to the remaining points submitted by the counsel for the defendants. I feel some consolation in overlooking the remaining errors assigned to the charge, because they relate to matters to which the attention of the court was not called, by the vigilance of the defendants, inasmuch as I perceive nothing very grievous in them.

The judgment of the court is affirmed.